UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/11/23
```

JASON TEN EYCK,

                Petitioner,

-against-

WILLIAM A. LEE, SUPERINTENDENT,

                Respondent.

19-cv-6924 (MKV) (RWL)

OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

MARY KAY VYSKOCIL, United States District Judge:

      Petitioner Jason Ten Eyck was convicted by a jury in New York State Supreme Court on eighteen counts involving sales of guns in exchange for drugs. After unsuccessfully appealing his convictions in state court, Ten Eyck filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [ECF No. 1]. The Court referred the case to Magistrate Judge Lehrburger [ECF No. 6]. In an exceedingly thorough and well-supported Report and Recommendation, Magistrate Judge Lehrburger recommended that the petition be denied [ECF No. 17 ("R&R")]. After the Court extended his time to object to the Report and Recommendation [ECF No. 19], Ten Eyck missed the extended deadline by one day [ECF No. 20].

      The Court assumes the parties' familiarity with the underlying facts and procedural history of this case, which are set forth in detail in the Report and Recommendation. *See* R&R at 2–17. Ten Eyck's objections were technically untimely, and, in every instance, he merely reiterates old arguments. Nevertheless, the Court has reviewed *de novo* every issue for which Ten Eyck raised more than a purely conclusory objection. The Court agrees with Magistrate Judge Lehrburger on each of those issues, and the Court finds no clear error in any other portion of the Report and

Recommendation. Accordingly, the Report and Recommendation is ADOPTED, and Ten Eyck's petition is DENIED.

## LEGAL STANDARDS

### A. Standard of Review a Magistrate Judge's Report and Recommendation

In reviewing a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept portions of the report and recommendation "to which no timely objection has been made," however, "a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Service, Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see* Fed. R. Civ. P. 72, Notes of Advisory Committee on Rules. The clear error standard also applies when a party "makes only conclusory or general objections, or simply reiterates his original arguments." *Llanos v. Goord*, 555 F. Supp. 2d 454, 456 (S.D.N.Y. 2008).

### B. Standard of Review Under Section 2254

Title 28, United States Code, Section 2254 permits a state prisoner to petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal court may grant relief only if the petitioner can demonstrate that he is in custody "because of a state court decision which was either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or (2) 'resulted

2

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Torres v. Green*, 290 F. Supp. 2d 396, 399 (S.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(d)).  A state court decision is "contrary to" clearly established Federal law when the court applies a rule that is "diametrically different, opposite in character or nature, or mutually opposed" to the governing law set forth in Supreme Court cases.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Factual determinations by a state court are "presumed to be correct," and the habeas petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## DISCUSSION

As stated above, the Court assumes familiarity with the underlying facts and procedural history of this case.  In short, Ten Eyck was convicted on eighteen counts for a course of conduct in which he sold firearms, many of which had been stolen from the NYPD, to an undercover police officer and, in exchange, Ten Eyck received oxycodone pills from a confidential informant.  Ten Eyck argued at trial, in a motion to vacate, and on appeal that he was entrapped and denied a fair trial.  However, the jury convicted Ten Eyck, the trial judge denied his motion to vacate, the First Department upheld his convictions, and the Court of Appeals denied Ten Eyck's application for leave to appeal.  The Court has carefully reviewed Ten Eyck's petition for a writ of habeas corpus [ECF No. 1 "Petition")], the response filed by the State of New York [ECF No. 15], the state court records [ECF Nos. 13, 13-1 ("Trial Tr."), 14, 14-1, 14-2 (collectively, "SR")], and the Report and Recommendation.   Ten Eyck (untimely) enumerates six objections to the Report and Recommendation [ECF No. 20 ("Objections")].  None has merit.

### A. The Magistrate Judge Fairly Summarized Ten Eyck's Arguments.

Ten Eyck first objects to the Magistrate Judge purportedly "re-characterizing his constitutional claims by rephrasing the claims and then only addressing only part of the claim and/or an entirely different claim than what was raised by the Petitioner in his pleadings." Objections at 1 [sic]. This general and conclusory assertion does not lend itself to a *de novo* determination of any issue. *See Llanos*, 555 F. Supp. 2d at 456. However, based on the Court's careful review of the Petition and the Report and Recommendation, the Court concludes that the Magistrate Judge fairly described Petitioner's arguments and thoroughly responded to those arguments.

### B. The Jury Instruction on Entrapment Does Not Provide a Basis for Habeas Relief

In his Petition, Ten Eyck argues that the trial judge gave the jury an erroneous instruction on entrapment that deprived him of the right to a fair trial. Petition at 4–5. In particular, Ten Eyck contends that the trial judge initially gave a proper entrapment charge but, after receiving a note from the jury asking for the definition of entrapment, the judge gave a "different and misleading version of the official charge" with respect to the question of predisposition to commit the offense. Petition at 5. In his Report and Recommendation, Magistrate Judge Lehrburger explained that the minor variations in the phrasing of the charges with respect to predisposition do not provide a basis for federal habeas relief. R&R at 23–24. In his Objections to the Report and Recommendation, Ten Eyck asserts that he "was not predisposed to commit the crime," the "trial judge changed the requirements of the entrapment defense to exclude predisposition," and the second entrapment charge violated his federal due process rights. Objections at 3–4.

In general, jury instructions are a matter of state law and do not provide a basis for habeas relief. As the Supreme Court has explained, "the fact that the instruction was allegedly incorrect

under state law is not a basis for habeas relief" because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 71–72 (1991). Thus, to obtain a federal writ of habeas corpus, "the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985). Here, Ten Eyck does not show that the trial judge gave an erroneous entrapment charge and he does not come close to showing a violation of his federal rights.

According to Ten Eyck, the trial judge's original entrapment charge was standard in New York and entirely proper. *See* Petition at 4 ("The Predisposition point was properly . . . defined"); *see also* Objections at 3. With respect to predisposition, the judge first instructed the jury: "In determining whether the defendant was not otherwise disposed to commit the offenses or an offense, you may consider his prior criminal conduct. The fact that the defendant has prior criminal conduct in his past, however, does not require you to find that he was predisposed to commit the crime." Trial Tr. at 509:17–22. After the jury sent a note, the judge instructed: "In determining whether the defendant was not otherwise predisposed to commit the offense or offenses, you may consider his criminal convictions and/or criminal conduct. The fact that the defendant has a criminal conviction or has engaged in criminal conduct, whether or not involving the criminal conduct alleged in the indictment, however, does not require you to find that he is predisposed to commit the crimes charged." Trial Tr. at 520:20–521:3. Neither party objected to the instruction in response to the jury's note. Trial Tr. at 518:3–519:17.

The two iterations of the entrapment charge are similar. Ten Eyck's contention that the "trial judge changed the requirements of the entrapment defense to exclude predisposition," Objections at 3, is contradicted by the trial transcript. The trial judge clearly instructed the jury to

determine whether or not the defendant was predisposed to commit the charged offenses each time he discussed entrapment. *See* Trial Tr. at 509:17–22, 520:20–521:3. He also instructed the jury that it was not required to find a predisposition to commit the charged offenses merely because the defendant had engaged in prior criminal conduct. *See id.* The trial judge merely added the phrase "whether or not involving the criminal conduct alleged in the indictment," indicating that the defendant's prior criminal conduct might, or might not, be different from the criminal conduct charged in the indictment. *See* Trial Tr. at 520:20–521:3.

Ten Eyck has offered the Court no reason to think the second entrapment charge "misstated state law." *Casillas*, 769 F.2d at 63. Notwithstanding Ten Eyck's challenges, the trial court result was affirmed on appellate review by the State's intermediate appellate court, *see People v Teneyck*, 155 A.D.3d 489, 65 N.Y.S.3d 22 (1st Dep't 2017), and the State's highest court saw no reason to grant review. S.R. 569. More importantly, the trial judge's decision to add the phrase "whether or not involving the criminal conduct alleged in the indictment" to the entrapment charge obviously did not violate Ten Eyck's federal constitutional due process rights or compromise his federal rights in any way. *See id.* Thus, it is not the role of a federal habeas court to assess whether the phrasing of the charge was proper under state law. *See Estelle*, 502 U.S. at 67–68, 71–72. The precise phrasing of the jury instructions on entrapment under state law simply do not provide any basis for federal habeas relief.

### C. The First Department Reasonably Rejected Ten Eyck's Sixth Amendment Claim

Ten Eyck maintains that the State violated his Sixth Amendment right to confront witnesses against him because the confidential informant who facilitated the guns-for-pills transactions did not testify. *See* Petition at 9. During the trial, Ten Eyck sought to call the confidential informant as a witness, but counsel for the confidential informant asserted that he had "no desire to testify"

6

and had "a Fifth Amendment right to decline to testify" based on his own pending criminal appeal. Trial Tr. at 347:10–17. The trial judge then asked Ten Eyck's counsel if he still wished to call the confidential informant to the witness stand "to formally invoke his privilege against self-incrimination," and Ten Eyck's counsel said no. Trial Tr. at 349:21–24. Ten Eyck's counsel did not seek a hearing or object. On appeal, Ten Eyck unsuccessfully argued that he was denied a fair trial because the confidential informant did not testify. SR at 343, 363–371; *see People v. Teneyck*, 65 N.Y.S.3d 22, 155 A.D.3d 489, 490–91 (1st Dep't 2017).

In his Petition, Ten Eyck asserts that the trial judge should have held a hearing "into the questions that [Ten Eyck's] counsel wished to ask" and should have compelled the confidential informant to testify wherever "he had no 5th Amendment sanctuary." Petition at 10. In his Report and Recommendation, Magistrate Judge Lehrburger correctly explains that, in the circumstances, a hearing was not necessary to establish that the confidential informant could properly invoke the Fifth Amendment and, in any event, Ten Eyck's counsel chose not to call the witness, request a hearing, or object. R&R at 27–30; *see United States v. Herron*, 762 F. App'x 25, 29 (2d Cir. 2019). In his Objections, Ten Eyck reiterates the assertions in his Petition and faults the Magistrate Judge for accepting the "Prosecutions Theories." Objections at 4–5.

The Court has carefully reviewed the Petition, the trial transcript, Ten Eyck's brief in his appeal to the First Department, and the First Department's decision. The state courts acted reasonably. The confidential informant had filed a notice of appeal in his own case. Trial Tr. at 347:10–17. If he prevailed in that appeal, the State could later use his testimony at Ten Eyck's trial against him. *See United States v. Rodriguez*, 706 F.2d 31, 36–37 (2d Cir. 1983). The trial judge asked Ten Eyck's if he still wished to call the confidential informant to the stand, and Ten Eyck's counsel said no. Trial Tr. at 349:21–24. The First Department rejected Ten Eyck's

7

argument that he was denied a fair trial because the confidential informant did not testify, *Teneyck*, 155 A.D.3d at 491, and this Court must defer to that decision unless it was contrary to, or unreasonably applied, federal law. *Williams*, 529 U.S. at 405. Here, there is no reason for a federal habeas court to second guess the work of the state courts.

### D. The State Courts Reasonably Rejected Ten Eyck's "New Evidence" Argument

After his trial, Ten Eyck moved to vacate his convictions based on an affidavit he described as new evidence from the confidential informant, which, according to Ten Eyck, supported Ten Eyck's account of their relationship and thus his entrapment defense. The trial judge denied the motion to vacate. SR at 322–31. He explained that the affidavit was not "newly discovered evidence" because Ten Eyck "knew, at the time of the trial, what information [the confidential informant] possessed." SR at 327. The trial judge also found "no probability that [Ten Eyck] would have received a more favorable verdict" based on the information in the affidavit because the confidential informant was "inherently untrustworthy." SR at 327. On appeal, the First Department agreed with the trial judge. *Teneyck*, 155 A.D.3d at 490.

In his Petition, Ten Eyck again argues that he was entitled to a new trial based on the purported new evidence in the affidavit from the confidential informant. Petition at 5–6. He asserts that the information in the affidavit "could have swayed" the jury. Petition at 6. However, as Magistrate Judge Lehrburger correctly explained in his Report and Recommendation, a federal court generally cannot grant habeas relief based on the mere existence of new evidence bearing on the guilt of a state prisoner. *See* R&R at 33; *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Rather, the petitioner must show that his newly discovered evidence is "so compelling that it would be a

violation of the fundamental fairness embodied in the Due Process Clause" not to grant relief. *White v. Keane*, 51 F. Supp. 2d 495, 502 (S.D.N.Y. 1999).

In his Objections, Ten Eyck argues that "the magistrate judge unreasonably accepted the trial court's interpretation" that Ten Eyck's purported new evidence was neither new, nor likely to change the verdict. Objections at 5. Ten Eyck is incorrect. A federal habeas court must "give appropriate deference" to the reasonable decisions of state courts. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

In reviewing this aspect of Ten Eyck's petition *de novo*, the Court has carefully reviewed the state court record. Ten Eyck argued in a motion to vacate and on appeal that he had a right to a new trial based on new evidence, but the state courts reasonably rejected that argument. The trial judge reasonably determined that the affidavit from the confidential informant was not newly-discovered evidence because Ten Eyck had known "at the time of the trial" what information the confidential informant possessed about his relationship with Ten Eyck. SR at 327. Indeed, as discussed above, Ten Eyck wanted to call the confidential informant to testify at his trial because Ten Eyck believed, at the time of the trial, that the confidential informant's testimony would support Ten Eyck's version of events. It was similarly reasonable for the trial judge to conclude that the testimony of the confidential informant was too untrustworthy to change the verdict. On appeal, the First Department agreed with the trial judge that Ten Eyck was not entitled to a new trial. *Teneyck*, 155 A.D.3d at 490. This Court owes deference to the reasonable determinations of the state courts. *Wilson*, 138 S. Ct. at 1192.

### E. The State Courts Reasonably Rejected Ten Eyck's Ineffective Assistance Claim

Ten Eyck repeatedly argued in the state courts that he received ineffective assistance of counsel because trial counsel did not present medical evidence that Ten Eyck was addicted to pain

9

killers. *See* SR at 159–160; SR 301, 303–310; SR 489–490; SR 561–563. In particular, Ten Eyck argued that medical records would have supported his entrapment defense because, according to Ten Eyck, he would not have been predisposed to engage in criminal conduct if he had not been in pain and going through withdrawal. SR at 162. In addition, Ten Eyck argued that his counsel should have offered evidence of his addiction to rehabilitate his credibility, arguing that Ten Eyck had made false statements because drug use clouded his memory and not because he was deceitful. The state courts rejected these arguments. The trial judge explained in detail that the "medical records were of limited value to the defense, and, in fact, undermine and contradict defendant's testimony in significant ways." SR 301. He further explained that there were "obvious strategic reasons" not to introduce the medical evidence in question and that there was "no reasonable possibility that the records would have caused a different outcome in the case." SR 309, 10. On appeal, Ten Eyck reiterated his ineffective assistance arguments to no avail. *See* SR 489–491; SR 561–563; SR 569; *see also Teneyck*, 155 A.D.3d at 491 ("We have considered and rejected defendant's pro se claims.").

In his Petition, Ten Eyck again argues that he received ineffective assistance of counsel. *See* Petition at 6. In his Report and Recommendation, Magistrate Judge Lehrburger correctly and thoroughly explained that the state courts had reasonably determined that Ten Eyck's counsel was not ineffective for failing to obtain or present medical evidence. *See* R&R at 37–40. Nevertheless, in his Objections, Ten Eyck rehashes the same arguments that he "has argued from the beginning," insisting that "because his trial lawyer did not have these records and did not speak to his doctors he could not possibly have performed up to the Strickland Standard." Objections at 7.

It is difficult for a state prisoner to obtain federal habeas relief based on an ineffective assistance claim. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). The test established in

*Strickland v. Washington*, 466 U.S. 668 (1984), requires a showing that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688, 694). "Surmounting [this] high bar is never an easy task." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* Thus, the Supreme Court has explained, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (internal quotation marks and citations omitted).

Ten Eyck cannot make the showing required by *Strickland*, let alone show that the state courts acted unreasonably when they rejected his ineffective assistance claim. Indeed, his claim fails at the first step of the analysis: Ten Eyck cannot show that his trial counsel's performance was objectively deficient. There were valid strategic reasons for counsel not to present medical evidence about Ten Eyck's drug addiction. In particular, as the trial judge explained, the medical records contradicted Ten Eyck's version of events "in significant ways," could have further undermined his credibility in front of the jury, and opened the door to potentially damaging lines of questioning. SR 301; *see* SR at 303–310. The law is clear that "actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992).

Ten Eyck's claim likewise fails at the second step of the *Strickland* analysis: he cannot show prejudice. The trial judge reasonably determined that introducing the medical evidence in

11

question would not have changed the outcome of Ten Eyck's trial. *See* SR 309, 10. Thus, the state courts reasonably rejected Ten Eyck's ineffective assistance claim.

**F. Ten Eyck's Sixth Objection**

Under the heading "OBJECTION NO 6," Ten Eyck simply asserts that he "OBJECTS to the findings" in the Report and Recommendation with respect to claims "2, 4, 6, [and] 7" in his Petition. Claim number "two" in the Petition is the claim that Ten Eyck's due process rights were violated when he was denied a new trial based on purported new evidence. Petition at 5–6. As explained above, the Court reviewed this issue *de novo* and concluded that the state court acted reasonably. *Supra* at 7–9. However, because Ten Eyck's objections with respect to claims 4, 6, and 7 are purely conclusory and general, the Court reviewed only for clear error. *See Llanos*, 555 F. Supp. 2d at 456.

"Ground four" of Ten Eyck's Petition asserts that the prosecutor committed misconduct by making himself a witness. Petition at 6–7. Magistrate Judge Lehrburger correctly explained that "[n]either the trial court nor the appellate court unreasonably applied clearly established federal law regarding prosecutorial misconduct" and, as such, "habeas relief is not warranted" on this ground. R&R at 31; *see* R&R at 30–32. The Court agrees.

"Ground six" of the Petition relates to what Ten Eyck describes as a "prejudicial *Sandoval* hearing." Petition at 7–8. Magistrate Judge Lehrburger correctly explained that *Sandoval* rulings are "evidentiary in nature," and state court rulings on evidentiary questions generally do not raise constitutional issues. R&R at 24 (citing *Sorrentino v. Lavalley*, 2016 WL 3460418, at *4 (S.D.N.Y. June 21, 2016), and *Roberts v. Scully*, 875 F. Supp. 182, 189 (S.D.N.Y.1995) (collecting cases), *aff'd*, 71 F.3d 406 (2d Cir. 1995)). Magistrate Judge Lehrburger correctly concluded that

Ten Eyck has not shown that the evidentiary rulings at issue were so "fundamentally unfair" as to violate due process and warrant habeas relief. R&R at 26.

"Ground seven" of Ten Eyck's Petition is yet another argument that he was entrapped. Petition at 8–9. In particular, Ten Eyck contends that the trial judge should have granted his motion to dismiss at the close of the prosecution's case on the ground that Ten Eyck was entrapped as a matter of law. Petition at 8–9. As discussed above in connection with the jury instructions, it is not the role of a federal habeas court to second guess the state court's determination of what state law requires to establish an entrapment defense. *See Estelle*, 502 U.S. at 63. As such, Magistrate Judge Lehrburger correctly concluded that Ten Eyck's argument about his mid-trial motion to dismiss is not a cognizable basis for habeas relief. R&R at 36.

## CONCLUSION

The Court agrees with Magistrate Judge Lehburger's conclusions and, on *de novo* review finds no error where Ten Eyck has objected, and indeed finds no clear error in any portion of the Report and Recommendation. As such, the Report and Recommendation is ADOPTED in full. Ten Eyck's petition for a writ of habeas corpus is DENIED in its entirety. The Clerk of Court respectfully is requested to close this case.

**SO ORDERED.**

Date: **September 11, 2023**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

13